IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PROSENO WAGNER | : | CIVIL ACTION |
| | : | NO. 10-2513 |
| v. | : | |
| | : | |
| COUNTY OF MONTGOMERY, et al. | : | |

O'NEILL, J.                                                                                         September 4, 2014

### **MEMORANDUM**

On May 24, 2010, plaintiff Proseno Wagner, proceeding pro se, instituted this action alleging violations of his rights under the Constitution. Dkt. No. 1; see also Dkt. No. 5 (complaint). I dismissed his complaint on December 16, 2010.[1] Dkt. Nos. 16, 17. Plaintiff filed an amended complaint on April 18, 2011. Dkt. No. 21. Defendants moved to dismiss the amended complaint. Dkt. No. 24. Subsequently, after having counsel appointed to represent him, on November 13, 2013, plaintiff filed a second amended complaint against defendants the County of Montgomery, Montgomery County Correctional Facility ("MCCF")[2], Julio Algarin, Dennis Molynoux, Edwin Negron, Albert Ottinger, Anthony Davis and Clarissa Hummel. Dkt. No. 34. Plaintiff now asserts the following claims under 42 U.S.C. § 1983: (1) against "defendants," a claim for "violation of Eighth And Fourteenth Amendments; cruel and unusual punishment and due process violation"; (2) against "defendants," a claim for "[d]enial of rights to freedom from cruel and unusual punishment" pursuant to the Eighth Amendment; and (3) against defendants County of Montgomery, Julio Algarin and Dennis Molynoux, a claim for

---

[1] Initially, plaintiff attempted to file his complaint asserting claims on his behalf and on behalf of thirty other inmates. I dismissed the thirty other inmates from this action on June 1, 2010, as, inter alia, they had not signed the complaint in accordance with Rule 11(a) of the Federal Rules of Civil Procedure. Dkt. No. 2.

[2] I will dismiss plaintiff's claims against MCCF. MCCF is not a "person" under § 1983 and for that reason cannot be liable to plaintiff under federal civil rights laws. See Allen v. Montgomery Cnty., No. 09-1458, 2009 WL 4042761, at *3 (E.D. Pa. Nov. 19, 2009).

"failure to train and provide proper staffing at the prison and medical care and treatment (policy, custom, pattern and practice)."[3]  Id.

Presently before me are defendants' motion to dismiss plaintiff's second amended complaint, Dkt. No. 35, and plaintiff's response thereto, Dkt. No. 39.  For the following reasons I will grant defendants' motion in part and will deny it in part.

## BACKGROUND

Plaintiff's claims arise from the alleged conditions of his confinement as a pre-trial detainee at MCCF from July 8, 2009 to July 9, 2010.  Plaintiff contends that he was forced to sleep in a holding cell without immediate access to a restroom when he first arrived at MCCF and was then moved to a room with fifty or more inmates where he was forced to sleep on a gym floor that also had limited access to a restroom.  See Dkt. No. 34 at ¶ 18.  Plaintiff alleges that he was then re-located from this room to other units where, in two-person cells he was bunked with three other men.  See id. at ¶¶ 19, 20.  He alleges that in these cells his bed was next to the toilet and his lower extremities were "constantly splashed throughout the night with fecal and urine water from the toilet."  Id. at ¶ 19.  Plaintiff claims that "the improper and substandard sleeping conditions within the cell and the problem with the waste material increased the tension and anger among his fellow cellmates and resulted in physical altercations wherein the plaintiff was required to defend himself."  Id. at ¶ 30.

Plaintiff also claims that as a result of the prison's overcrowded and unsanitary conditions, he developed and suffered "rashes, staph infections, sores, boils and at times open wounds on his ankles, feet, legs and buttock areas."  Id. at ¶ 23.  Plaintiff claims that he advised

---

[3]  Plaintiff's second amended complaint also asserts a claim for negligence against all defendants as his fourth cause of action.  In his response to defendants' motion, he asks that his negligence claim be withdrawn.  See Dkt. No. 39 at ECF p. 22.  I will dismiss Count IV of plaintiff's complaint without prejudice.

defendants of his living conditions and sought medical attention for his injuries but was "denied access to any medical care," "ignored" and refused access to grievance forms. Id. at ¶¶ 25-28. Plaintiff also asserts that he suffered physical injuries from altercations between inmates caused by the "tension and anger" exacerbated by the living conditions. Id. at ¶ 30. Plaintiff states that in response to his request for medical care, he was told that "he complained too much." Id. at ¶ 28. When plaintiff requested a grievance form seeking relocation to a unit where he would not be housed with convicted inmates, plaintiff alleges that he was told to "just suck it up." Id. at ¶ 34.

Plaintiff was convicted of another matter on or about July 9, 2010, "and later transferred to a state correctional facility." Id. at ¶ 36.

Defendants now seek dismissal of plaintiff's amended complaint in its entirety, arguing, inter alia, that: (1) plaintiff fails to state a plausible claim that his living conditions or medical treatment violated the Eighth or Fourteenth Amendments; (2) plaintiff's claims fail because he has not alleged a physical injury that is more than de minimis as is required under 42 U.S.C. § 1997e(e); (3) the individual defendants are entitled to qualified immunity; and (4) MCCF is not a legal entity subject to liability under § 1983. Dkt. No. 35 at 9-15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I.     Alleged Constitutional Violations

Plaintiff's second amended complaint asserts claims for violations of his constitutional

rights pursuant to 42 U.S.C. § 1983.  To state a claim under § 1983, plaintiff "must establish that [ ]he was deprived of a federal constitutional or statutory right by a state actor."  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  Defendants argue that plaintiff has not sufficiently alleged a plausible claim based on either the conditions of his confinement or inadequate medical attention.  Dkt. No. 35 at ECF p. 9-11.  For the reasons that follow, I disagree.

Although plaintiff's second amended complaint asserts claims pursuant to both the Eighth and Fourteenth Amendments, in his response to defendants' motion, plaintiff concedes that his claims are governed by the due process clause of the Fourteenth Amendment, and not the Eighth Amendment since his claims arise from his confinement as a pre-trial detainee.[4]  Dkt. No. 39 at ECF p. 11 ("we agree that the governing standard is the 'due process' clause of the Fourteenth Amendment and not the 'cruel and unusual punishment' standard of the Eighth") (emphasis in original).  The distinction between claims brought under the Eighth Amendment and those brought under the Fourteenth Amendment is important because unlike convicted detainees, pretrial detainees may not be punished.  See  Bell v. Wolfish, 441 U.S. 520, 537 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment.").

"In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee . . . a

---

[4] The Court of Appeals has explained that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause . . . the Due Process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993), quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  I will dismiss plaintiff's claims to the extent that he asserts violations of his rights under the Eighth Amendment.

detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Hubbard v. Taylor (Hubbard II), 538 F.3d 229, 231 (3d Cir. 2008), citing Bell, 441 U.S. at 538-40.  Because there will rarely be an express intent to punish, the Court of Appeals has distilled the due process analysis under the Fourteenth Amendment into two parts.  See Mestre v. Wagner, No. 11-2191, 2012 WL 299652, at *3 (E.D. Pa. Feb. 1, 2012).  I "'must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.'"  Hubbard II, 538 F.3d at 232, quoting Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983).

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'  Conversely, if a restriction or condition is not reasonably related to a legitimate goal – or it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539.  When making this determination, courts are advised to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials, and . . . should ordinarily defer to their expert judgment in such matters."  Id. at 540 n.23.

### A.   Conditions of Confinement

Confining multiple inmates in a cell does not by itself violate the due process clause. Hubbard II, 538 F.3d at 236 (holding that pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); Gibase v. George W. Hill Corr. Facility, No. 14-3261, 2014 WL 2748366, at *2 (E.D. Pa. June 16, 2014) (stating "housing multiple inmates in a cell does not alone establish a constitutional violation."); North v. White, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is

not per se unconstitutional."). The Supreme Court has acknowledged however that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Bell, 441 U.S. at 542.

Thus I must look at the totality of the circumstances of plaintiff's confinement when analyzing his claims of due process violations under the Fourteenth Amendment. See Hubbard v. Taylor (Hubbard I), 399 F.3d 150, 160 (3d Cir. 2004) ("Our inquiry into whether given conditions constitute "punishment" must therefore consider the totality of circumstances within an institution."). The totality of the circumstances test requires that I look at the overall conditions of the prison including the detainee's length of confinement, opportunity to exercise and other activities out of the cell, the overall size of the cell and "the general state of repair and function of the facilities provided." Union Cnty. Jail Inmates, 713 F.2d at 1000; see also Hubbard II, 538 F.3d at 233, citing Ferguson v. Cape Girardeau Cnty., 88 F.3d 647, 650 (8th Cir. 1996) ("In evaluating the conditions, the court must look to a number of factors, including the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise").

Plaintiff here has alleged that for at least a period of just under a year, he was housed in a quadruple bunk, forced to sleep next to a toilet that splashed urine and feces and was refused access to grievance forms.[5] See Dkt. No. 34 at ¶¶ 19-22, 25. He also claims that the allegedly overcrowded and unsanitary conditions in his cell "increased the tension and anger among his

---

[5] The terms 'quadruple bunk' or 'quadruple cell' refer to housing four men in a cell built for two. See e.g., Hubbard I, 399 F.3d at 154 (stating that the practice of "housing three detainees in cells intended and designed for one person" is referred to as "triple-celling"); Bell, 441 U.S. at 526 (using term 'double-bunking' to refer to housing two men in a cell built for one).

fellow cellmates" and caused "physical altercations." Id. at ¶ 30. Plaintiff has alleged he was subjected to the claimed conditions for a significant amount of time and has additionally alleged that he developed physical injuries as a result of his living conditions. Dkt. No. 34 at ¶ 23-26. Viewing the facts and the totality of the circumstances in the light most favorable to plaintiff, his allegations amount to more than a bare allegation that he was quadruple-celled. I find that plaintiff has set out "'sufficient factual matter' to show that [his] claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d at 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678; see Daniels v. Taylor, 13-5510, 2014 WL 3955372, at *5-6 (D.N.J. Aug. 13, 2014) (denying the defendants' motion to dismiss the plaintiff's conditions of confinement claim where his complaint included allegations that he was triple-celled, denied adequate day room space and clean bedding and towels, subjected to mold and insect infected showers and the plaintiff claimed the conditions caused him to suffer from a foot fungus); cf. Lindsey v. Shaffer, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."). Contra Hakim v. Levinson, No. 08-4012, 2008 WL 4852612, at *6 (D.N.J. Nov. 3, 2008) ("Plaintiff's overcrowding allegations do not state a claim since Plaintiff asserts the fact of his sleeping on a floor mattress near a toilet, but does not allege that he has been deprived of access to a day-room area, or that the day-room area was unduly small, or that he suffered any illness/disease as a result of sleeping next to the toilet, etc.").

### B.     Medical Attention

In addition to his conditions of confinement claim, plaintiff also claims that his constitutional rights were violated when he was denied access to medical care for his "rashes, staph infections, sores, boils and at times open wounds on his ankles, feet, legs and buttock

areas," Dkt. No. 34 at ¶ 24, injuries which he claims went untreated despite defendants' awareness of them and his requests for treatment.  See Dkt. No. 34 at ¶¶ 23-29, 32-33, 35, 37.  Defendants contend that "[p]laintiff's skin maladies should not be considered a condition of sufficient seriousness to support" plaintiff's claim under § 1983 for denial of medical care in violation of his rights under the Fourteenth Amendment.[6]  Dkt. No. 35 at ECF p. 11.

Like plaintiff's allegations regarding his conditions of confinement, plaintiff's allegation that he was denied medical treatment is "evaluate[d] . . . under the Due Process clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment."  Thrower v. Alvies, 425 F. App'x 102, 104 (3d Cir. 2011), citing Hubbard I, 399 F.3d at 166.  The Supreme Court has held that the Due Process Clause provides pretrial detainees with protections which are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244-45 (1983).  "In order to state a Fourteenth Amendment claim of inadequate medical attention upon which relief may be granted, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs."  Lenhart v. Pennsylvania, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam), citing City of Revere, 463 U.S. 239, 243-44 (1983), and Natale v. Camden Cnty. Corr.

---

[6] Defendants also contend that plaintiff cannot maintain his claims because he has not sufficiently alleged a physical injury that is more than de minimis.  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, restricts a prisoner's ability to recover compensatory damages for solely mental and emotional injuries.  "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Court of Appeals in Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir.2003), held that in order to satisfy § 1997e(e)'s physical injury requirement, a plaintiff must demonstrate a less than significant, but more than de minimis physical injury.  Id. at 536. . "[T]he prevailing view is that physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional."  In re Bayside Prison Litig., No. 09-2365, 2010 WL 4916716, at *3 (D.N.J. Nov. 23, 2010) (citations and internal quotation omitted).  Plaintiff's allegations that he "developed rashes, staph infections, sores, boils and at times open wounds on his ankles, feet, legs and buttock areas," Dkt. No. 34 at ¶ 23, make a showing of a physical injury sufficient to withstand defendants' motion to dismiss.

Facility, 318 F.3d 575, 581 (3d Cir. 2003).

The Court of Appeals has held that a medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981). Plaintiff contends that his allegations of "rashes, staph infections sores, boils and at times open wounds on his ankles, feet, legs and buttock areas," Dkt. No. 34 ¶ 23, and "significant pain and itching," id. ¶ 24, support his claim that he suffered from "serious medical conditions which required timely medical attention . . . ." Dkt. No. 39 at ECF p. 14. At this stage of the proceedings, I find that his allegations are sufficient to satisfy the serious medical need requirement.

Further, because plaintiff has alleged that he received no medical treatment for his alleged injuries despite his claimed efforts to gain assistance from several defendants, see Dkt. No. 34 at ¶¶ 25, 28, 32, 33, I find that he has sufficiently alleged deliberate indifference. Deliberate indifference occurs when a prison official knows of and disregards an excessive risk to a prisoner's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "It may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." Halaka v. Park, No. 12 -1506, 2014 WL 2457395, at *4 (W.D. Pa. May 29, 2014), citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993). Plaintiff's allegations, when taken as true, allow me to draw a reasonable inference that defendants were deliberately indifferent to Plaintiff's medical conditions. See Iqbal, 556 U.S. at 678.

**II.     Qualified Immunity**

In their motion to dismiss, the individual defendants contend that they "should be granted qualified immunity from the § 1983 claims of Plaintiff's second amended complaint." Dkt. No. 35 at ECF p. 13. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010), citing Pearson v. Callahan, 555 U.S. 223 (2009). To determine whether qualified immunity applies to bar plaintiff's claims, I must decide whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right[.]" Hubbard II, 538 F.3d at 231 (2008), citing Saucier v. Katz, 533 U.S. 194, 201 (2001). Because, as is set forth above, I have found that the facts alleged in the second amended complaint are sufficient to plead constitutional violations based on the conditions of plaintiff's confinement and the alleged denial of access to medical care, I must consider whether the rights in question were "clearly established." Id.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [corrections] officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "[T]he imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). Indeed, the Court of Appeals has held that "a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds . . . ." Thomas v. Independence Twp., 463 F.3d 285, 293 (3d Cir. 2006).

-11-

I find that I cannot determine whether it is appropriate to dismiss plaintiff's claims on the basis of qualified immunity without further development of the relevant facts. See Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); Perano v. Arbaugh, 10–CV–01623, 2011 WL 1103885, at *17 n.71 (E.D. Pa. Mar.25, 2011) ("[I]t is possible for a claim to survive a motion to dismiss under Iqbal while not providing sufficient facts to allow the court to conduct a qualified immunity analysis."). With respect to plaintiff's claims pertaining to the conditions of confinement, the second amended complaint does not contain sufficient factual allegations regarding the "totality of the circumstances" to permit me to determine at present whether it would have been "clear to a reasonable person" that the conditions plaintiff faced in his cell were sufficient to rise to the level of an unconstitutional punishment. I also find that the second amended complaint does not contain sufficient allegations with respect to the severity of plaintiff's claimed ailments to permit me to determine at this stage of the proceedings whether it would have been "clear to a reasonable person" that the denial of access to medical care for the ailments from which plaintiff claims to have suffered was equivalent to an unconstitutional punishment. Defendants may renew their qualified immunity argument at the summary judgment stage. See generally Mitchell v. Forsyth, 472 U.S. 511, 526, (1985) ("the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed [acts that violated clearly established law]").

### III.   Claims Against Montgomery County

Although I find that plaintiff has sufficiently alleged a claimed violation of his Fourteenth

Amendment rights based on the conditions of his confinement and the denial of access to medical care, I will dismiss his claims to the extent that he asserts them against Montgomery County. For Montgomery County to be held liable for the allegedly unconstitutional acts of its employees under Monell v. New York City Department of Soc. Services, 436 U.S. 658 (1978), plaintiff must sufficiently allege that his injuries were inflicted through the execution of a policy or custom of the County. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990) (citations omitted). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (citation, alteration and internal quotation marks omitted). Plaintiff has "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d. Cir. 2007), citing Andrews, 895 F.2d at 1480; see also Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir.2002), citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (holding that to survive a motion to dismiss, plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation"). To the extent that plaintiff alleges that the County failed to adequately train the individual defendants, his allegations give rise to a cause of action under § 1983 only if the deficient training reflects deliberate indifference to plaintiff's civil rights and is closely related to the ultimate injury. Kline ex rel Arndt v. Mansfield, 255 F. App'x 624, 629 (3d Cir. 2007), citing City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff's second amended complaint provides no factual details regarding the existence, scope or application of the policies, practices, procedures or customs that he claims give rise to his claims against the County. Plaintiff alleges only that the County

> had for many years adopted, or failed to adopt, recognize and accept that policies, customs and practices within the prison, including but not limited to the following, [sic][7] which knowingly placed inmates in dangerous positions and/or increased the risk of danger to inmates such as plaintiff, and which ultimately resulted in plaintiff's injuries, and failing to adopt, maintain and enforce appropriate procedures to ensure that timely, proper and prescribed treatment of inmates who need to receive care [sic].

Dkt. No. 34 at ¶ 55. He alleges, without any supporting facts, that the "policies, practices and customs at the prison" which were "implemented, enforced, ratified and/or known to [all] defendants" (including the County) included: (1) "failing to ensure that a proper system for medical assistance requests was in operation;" (2) "failing to provide adequate and sufficient medical and nursing staffing to ensure that inmates with serious medical needs are provided with medical care;" (3) "failing to correct known deficiencies in the medical delivery system at the prison that were likely to cause injury to inmates;" and (4) "failing to investigate and to properly and timely address the substandard sleeping arrangements and the problem with fecal, urine and other waste materials splashing on the plaintiff and perhaps other inmates." Id. at ¶ 44. These allegations are not sufficient to permit the Court "to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679

Plaintiff also claims the County had a policy or custom of "failing to properly train supervise and discipline medical and correctional staff with respect to their obligations to ensure that inmates with serious medical conditions receive timely and proper medical care." Dkt. No.

---

[7] No policies, customs or practices are identified in paragraph 55 of the second amended complaint or thereafter.

34 at ¶ 44(d). Here too plaintiff fails to allege facts sufficient to support his claims against the County. Even assuming arguendo that plaintiff has sufficiently identified what training the County should have provided in order to prevent the constitutional violations alleged, he alleges no facts that could show that the County was deliberately indifferent to the need to provide training or that the alleged failure to train was the actual cause of plaintiff's injuries. See Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (affirming dismissal where plaintiff failed to identify "the specific training the County should have offered which would have prevented the deprivation of their constitutional rights").

I will dismiss plaintiff's claims against the County with leave to amend to the extent that he can sufficiently plead the existence of a County policy or custom or a pattern of violations by the County.

## IV. Claims Against Algarin and Molynoux

I will also dismiss plaintiff's claims to the extent that he asserts them against Warden Julio Algarin and Deputy Warden Dennis Molynoux as I find he has not sufficiently alleged a basis for the imposition of supervisory liability upon them. "In order to impose individual supervisory liability under Section 1983, 'there must be some affirmative conduct by the supervisor that played a role in the discrimination." Heneghan v. Northampton Cmty. Coll., No. 09–04979, 2010 WL 273063, at *8 (E D. Pa. Jul. 8, 2010), quoting Andrews, 895 F.2d at 1478. Plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Plaintiff alleges that he "sought to obtain relief by speaking directly to [Algarin and Molynoux] about the substandard and improper sleeping conditions, the fact that fecal material and urine constantly splashed on his body from the toilet and the fact that he needed immediate medical attention for his physical injuries." Dkt. No. 34 at ¶ 29. He claims that "Warden Algarin and Deputy Warden Molynoux ignored [his] pleas for help, assistance and correction. They said they could not do anything. Warden Algarin also advised the plaintiff that the plaintiff had to go through the chain of command." Id. at ¶ 31. Plaintiff further alleges that, like the County, Algarin and Molynoux "adopted or failed to adopt" "policies, customs and practices. . . which knowingly placed inmates in dangerous positions and/or increased the risk of danger to inmates . . . ." Dkt. No. 34 at ¶ 55.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. I find that plaintiff's allegations with respect to Algarin and Molynoux are insufficiently specific to state a claim against them. He does not explain when or how he "sp[oke] directly to" the Warden and Deputy Warden. Nor does he identify with any specificity the policies. customs or practices they are alleged to have adopted or failed to adopt. His allegations amount to a recitation of the legal elements of his claim from which it cannot be inferred that either Algarin or Molynoux had sufficient personal involvement in the claimed constitutional violations to support the imposition of liability upon them. I will dismiss plaintiff's claims against Algarin and Molynoux with leave to amend to the extent that he can plead their personal involvement with particularity.

An appropriate Order follows.